```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
--------------------------------------

NIGEL FREDRICKS,

                        **Plaintiff,**

    - against –

**CORRECTION OFFICER SMITH,**

                        **Defendant.**

**21-cv-5669 (JGK)**

**MEMORANDUM OPINION AND ORDER**

--------------------------------------

**JOHN G. KOELTL, District Judge:**

    The pro se plaintiff, Nigel Fredericks, brought this action pursuant to 42 U.S.C. § 1983 against the defendant, Correction Officer Sean Smith, alleging deliberate indifference to the plaintiff's safety and deliberate indifference to the plaintiff's need for medical care. The defendant now moves for summary judgment. For the following reasons, the defendant's motion for summary judgment is **granted.**

### I.

    The following facts are undisputed in the record. At approximately 11:00 p.m. on May 21, 2021, the defendant was assigned to a post at the 2 Upper North housing area of the Robert N. Davoren Complex ("RNDC"), a detention center within the New York City Department of Correction ("DOC"). Def.'s 56.1 at ¶¶ 7-8, 10, ECF No. 69. At approximately 5:00 a.m. the next morning, the plaintiff, a pretrial detainee within DOC, was moved to 2 Upper North. Id. ¶¶ 7-9. The defendant was not

involved in this move. Id. ¶ 12. The plaintiff did not express any concerns about the move or his safety to the defendant during the defendant's post, which ended at approximately 3:30 p.m. that day. Id. ¶¶ 10, 13.

The plaintiff alleges that, sometime during the morning of May 22, he took a shower and then returned to his cell, leaving its door ajar. Sherwood Decl., Ex. B at 34:5-35:9, ECF No. 67-2 ("Fredricks Dep."). Thereafter, the plaintiff alleges, he was assaulted in his cell by a group of other inmates, one of whom the plaintiff knew from prior detention, who punched him, kicked him, stomped on him, and put his head in a toilet. Id. at 36:11-22, 37, 39:22-25, 43:8-14.

However, video footage of 2 Upper North for May 22, 2021 contains no evidence of this assault. Def.'s 56.1 at ¶ 34. Additionally, in an email to other prison officials sent at approximately 1:52 p.m. on May 22, 2021, DOC Captain Fuca stated that the plaintiff may be a target for an act of violence and that the plaintiff requested to be moved from his cell to prevent an incident. Id. ¶¶ 14-15. Finally, when the plaintiff reported the alleged assault at 5:00 p.m. on May 22, 2021, he refused to provide any details about the identity of his assailants or where the assault occurred. Id. ¶¶ 31-33.

Ultimately, at approximately 5:35 p.m. on May 22, 2021, the plaintiff was moved out of 2 Upper North without incident. Id. ¶

16. Later that evening, at approximately 11:31 p.m., the plaintiff met with medical staff and then returned to his new housing area. Id. ¶ 17.

Two days later, on May 24, 2021, the plaintiff complained of pain in his right hand, right wrist, and right side of his ribs, and of swelling in his right hand. Id. ¶ 18. Upon arrival at the RNDC's clinic, the plaintiff was examined by a physician's assistant, who recorded the alleged assault as occurring during the evening of May 22, 2021, at 6:00 p.m., id. ¶ 19, contrary to the plaintiff's allegation that the assault occurred during the early morning of May 22. The physician's assistant ordered x-rays of the plaintiff's right hand and right ribs, prescribed the plaintiff pain medication (Naproxen 500 MG, one tablet, twice per day), and noted that the plaintiff had "no respiratory distress" and was "comfortable breathing." Id. ¶¶ 21-22. The x-rays showed no fractures and "no acute injury." Id. ¶¶ 23-24. Later, the plaintiff testified that, "besides mentally," he has completely recovered from the alleged assault. Id. ¶ 25.

## II.

The standard for granting summary judgment is well established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."[1] Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the materials in the record that "it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). At the summary judgment stage, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The substantive law governing the case will identify those facts that are material and, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### III.

### A.

The defendant initially argues that the plaintiff is barred by the Prisoner Litigation Reform Act ("PLRA") from pursuing his claims because the plaintiff has not exhausted DOC's administrative grievance procedure, namely the Inmate Grievance Resolution Program ("IGRP"). See Def's Mem. of Law at 14-16, ECF No. 70.

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

4

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Moreover, "[t]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). And this exhaustion requirement is one of "proper exhaustion": "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." Woodford v. Ngo, 548 U.S. 81, 88, 93 (2006); see also Jones v. Bock, 549 U.S. 199, 218 (2007) (defining "applicable procedural rules" as "the prison grievance procedure itself").

In this case, the plaintiff is subject to the PLRA's exhaustion requirement. As a detainee at the RNDC, he was "a prisoner confined in a jail," and his claims of deliberate indifference to safety and medical care fall squarely into the category of "all inmate suits about prison life." See Radcliffe v. McGinnis, No. 00-cv-4966, 2001 WL 1142187, at *2 (S.D.N.Y. Sept. 27, 2001) (applying the PLRA's exhaustion requirement to a deliberate indifference to safety claim); Massey v. City of New

5

York, No. 20-cv-5665, 2021 WL 4943564, at *7 (S.D.N.Y. Aug. 30, 2021) (applying the PLRA's exhaustion requirement to a deliberate indifference to medical care claim). Thus, the issue is whether the plaintiff went through the applicable grievance procedures and fulfilled the PLRA's exhaustion requirement.

Pursuant to the IGRP, an inmate must first file a grievance with the Office of Constituent and Grievance Services. See Sherwood Decl., Ex. C at § V(F), ECF No. 67-3 ("IGRP Directive"). If that Office's response is adverse or if the Office does not respond, an inmate must exhaust three levels of appeal -- first to the facility's Commanding Officer, then to the Division Chief, and then to the DOC's Central Office Review Committee. See id. §§ VI(A)(7)(a), VII(D), VIII(B). An inmate does not exhaust the IGRP for the purposes of the PLRA unless that inmate first files a grievance with the Office of Constituent Grievance Services and then pursues all three levels of appeal. See Reuben v. N.Y.C. Dep't of Corr., No. 11-cv-378, 2011 WL 5022928, at *2 (S.D.N.Y. Oct. 18, 2011) ("A prisoner's remedies are not deemed exhausted until he proceeds through all three levels of the IGRP.").

In this case, the plaintiff does not dispute that he failed to pursue any of the levels of appeal laid out by the IGRP.[2] See

---

[2] The parties appear to dispute whether the plaintiff filed an initial grievance. Compare Pl.'s Opp'n at 15, with Def.'s 56.1 at ¶ 6. However, to the extent that the plaintiff alleges that he filed an initial grievance, he

6

Pl.'s Opp'n at 15, ECF No. 100. Rather, the plaintiff appears to argue that the IGRP's requirements did not apply to him because of the COVID-19 pandemic. See id. (repeatedly citing "pandemic status/danger"). However, by the time the alleged incident occurred on May 22, 2021, the IGRP exhaustion requirement was in place. See Rodriguez v. City of New York, No. 21-cv-1384, 2023 WL 2368985, at *1, 4 (S.D.N.Y. Mar. 6, 2023) (finding that an asthmatic inmate, injured by smoke during January 2021, was still required to meet the exhaustion requirement).

In summary, the plaintiff was required under the PLRA to exhaust the DOC's prison grievance procedure (the IGRP) before bringing these claims; he has not exhausted the IGRP; and he has no legally cognizable excuse for that failure to exhaust. Accordingly, the plaintiff's deliberate indifference to safety and medical care claims are barred by the PLRA and must be dismissed.

**B.**

Moreover, for purposes of completeness, the defendant has also shown that he is entitled to summary judgment dismissing

---

provides no evidence for that allegation. In any event, the plaintiff's failure to exhaust the IGRP's levels of appeal bars his claims even if he filed a grievance, and even if that grievance received no response. See Pizarro v. Ponte, 2019 WL 568875, at *5 (S.D.N.Y. Feb. 11, 2019)("[T]he law is well-settled that the failure to take an administrative appeal, even when the initial grievance receives no response, constitutes a failure to exhaust available administrative remedies.").

the claims against him on the merits. See Def.'s Mem. of Law at 8-14.

### i. Deliberate Indifference to Safety

The plaintiff has failed to present any genuine issues of material fact supporting his deliberate indifference to safety claim.

"A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment[.]" Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017). "A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions." Id. The claimant must satisfy two prongs: "an objective prong showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a . . . mens rea prong or mental element prong -- showing that the officer acted with at least deliberate indifference to the challenged conditions." Id.

The mental prong of a deliberate indifference claim can be satisfied in one of two ways. "[T]o establish a claim for deliberate indifference . . . the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable

8

care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." Id. at 35.

An officer could not reasonably be found to be deliberately indifferent to an inmate's safety based on an alleged attack if the officer was "not present at the time of the attack, and thus . . . could [not] have actually intervened to stop it[,]" and the officer is not "on notice that an attack [i]s imminent because there ha[ve] been no prior altercations" or because the victim "[di]d not complain[] to any prison officials that he was in danger." Brown v. City of New York, No. 13-cv-6912, 2017 WL 1390678, at *11 (S.D.N.Y. Apr. 17, 2017).

In this case, the defendant did not act intentionally to impose the alleged condition. The defendant was not involved in moving the plaintiff to 2 Upper North. See Def.'s 56.1 at ¶ 12. There is no evidence to suggest the defendant knew that other inmates could attack the plaintiff. Rather, the defendant began his shift just hours before the alleged attack, and the email about moving the plaintiff to another area was sent after the alleged attack. See id. ¶¶ 10, 14-15. The plaintiff never expressed safety concerns to the defendant. See id. ¶ 13; see also Fredricks Dep. at 38:5-8. Nor did the defendant recklessly fail to act with reasonable care to mitigate the risk to the

9

plaintiff. As the plaintiff concedes, the defendant was not present for the assault; the defendant arrived "seconds later." See id. at 55:10-12. Accordingly, like the officers in Brown, the defendant was absent for an assault concerning which he had no prior notice, and thus did not act with deliberate indifference to the plaintiff's safety.

The plaintiff appears to argue that the defendant knew or should have known that the plaintiff was at risk of assault because DOC allegedly knew that the plaintiff was a member of the Crip gang and that 2 Upper North was populated by members of the Blood gang. See Pl.'s Opp'n at 24. However, the plaintiff fails to proffer any evidence that the defendant in this case knew or recklessly failed to know about this fact. Moreover, there is no dispute that the plaintiff never expressed safety concerns to the defendant, the defendant was not involved in the plaintiff's assignment to 2 Upper North, and the email about moving the plaintiff to another area was sent after the alleged attack. See Def.'s 56.1 at ¶¶ 10, 12-15.

### ii.

The plaintiff has also failed to show a genuine dispute of material fact regarding his claim of deliberate indifference to medical care. The medical care claim is also governed by the Due Process Clause because the plaintiff is a pretrial detainee, and the plaintiff must satisfy both the objective and mental prongs

10

of a deliberate indifference claim. See Darnell, 849 F.3d at 29 (explaining that both prongs are needed for any "§ 1983 claim for allegedly unconstitutional conditions of confinement"); see also Cunningham v. Agro, No. 15-cv-1266, 2023 WL 2647105, at *2-3 (S.D.N.Y. Mar. 27, 2023) (applying Darnell to a deliberate indifference to medical care claim).

The first issue is whether the two-day delay in receiving x-rays amounted to a deprivation of medical care. See Def.'s Mem. of Law at 13-14.

"In cases where temporary delays or interruptions in the provision of medical treatment have been held to satisfy the objective seriousness requirement, they have involved either a needlessly prolonged period of delay or a delay that caused extreme pain or exacerbated a serious illness." Gantt v. Horn, No. 09-cv-7310, 2013 WL 865844, at *9 (S.D.N.Y. Mar. 8, 2013). In Patterson v. Westchester County, for example, a plaintiff complaining about an injured ankle was not provided crutches and had to wait three days for an x-ray to be taken and nine days to get the results of the x-ray that revealed he had torn ligaments and "should not walk without crutches." No. 13-cv-0194, 2014 WL 1407709, at *1-2 (S.D.N.Y. Apr. 11, 2014), report and recommendation adopted, 2014 WL 2759072 (S.D.N.Y. June 16, 2014). However, the court held that the nine-day delay "in taking and reporting the results of an x-ray that revealed torn

11

ligaments d[id] not constitute a sufficiently serious treatment delay." Id. at *7.

In this case, there is no evidence that the plaintiff's wait to receive an x-ray constituted a needlessly prolonged delay in care. The plaintiff received an x-ray on May 24, 2021, two days after the alleged incident and the same day that the plaintiff complained of a swollen right hand and pain in that hand, wrist, and the right side of his ribs. See Def.'s 56.1 at ¶¶ 18, 20-21. The x-ray the plaintiff ultimately received revealed no acute injury. See id. ¶ 24. Moreover, the plaintiff fails to allege any severe pain or exacerbation of illness associated with the two-day delay.

Furthermore, the plaintiff presents no genuine issue of material fact regarding the mental element prong of his deliberate indifference to medical care claim against Officer Smith. The plaintiff must show that there is an issue as to whether the defendant at least "recklessly failed to act with reasonable care to mitigate the risk that the condition posed to [the plaintiff] even though [the defendant] knew, or should have known, that the condition posed an excessive risk to health or safety." Darnell, 849 F.3d at 35. However, the plaintiff proffers no evidence that the defendant knew or should have known about the plaintiff's injuries, nor does he suggest that the defendant was in any way responsible for the delay.

12

In summary, the defendant is entitled to summary judgment with respect to the plaintiff's deliberate indifference to safety and medical care claims.

### C.

Finally, the defendant also correctly argues that he is entitled to qualified immunity with respect to plaintiff's claims. See Def.'s Mem. of Law at 16-17.

"Qualified immunity protects officials from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Taravella v. Town of Wolcott, 599 F.3d 129, 133 (2d Cir. 2010) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "A right is clearly established only if its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." Muschette on Behalf of A.M. v. Gionfriddo, 910 F.3d 65, 69 (2d Cir. 2018) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

In this case, the defendant did not violate any statutory or constitutional right, let alone a right that is clearly established. Thus, the defendant is entitled to qualified immunity with respect to both claims.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the defendant's motion for summary judgment is **granted**. The Clerk is directed to close ECF No. 66. The Clerk is also directed to enter judgment dismissing this case and closing the case.

**SO ORDERED.**

**Dated:**   New York, New York
           July 25, 2024

                                    _____
                                         John G. Koeltl
                                    United States District Judge